Good morning. May it please the Court, Charlotte Merrill from the Federal Public Defenders on behalf of Mr. Doerr. I'll try to watch the clock and reserve five minutes for rebuttal. And if the Court would like us to do it in any other order, I'm happy to do that. I plan to just address everything since it's our appeal was filed first, but if the Court would like us to split it up any other way, I'd be happy to do that. I think we're fine with the typical process, just wasn't quite sure if you wanted something different. Thank you so much. The errors in this case deprived Mr. Doerr of an individualized capital sentencing, one that recognized that he was a child with serious developmental issues, that he was raised in a sadistic, abusive household, that he was put in an orphanage at 15 and started drinking there, became an alcoholic, and had brain damage. I'll of course defer to the Court's questions, but I had planned to briefly address the IAC claim and its posture, and then turn to the merits of the Eddings writ. Regarding the IAC claim, Ramirez now requires that for Martinez purposes, a petitioner should bring evidence in a procedurally proper manner in state court. Here, a procedurally appropriate way to do that still exists, because the Arizona courts recognize exceptions for preclusions in unusual circumstances. The unusual circumstance here would be that Mr. Doerr is intellectually disabled and illiterate, and his post-conviction counsel only ever communicated with him by on this unusual circumstances. Exception to preclusion in Arizona is State v. Anderson, which was the subject of the 28J letter that we recently filed. Turning to the Eddings and Tenard writ, let me ask you a question before you move on. Are you asking us then to reconsider our order? Yes, Your Honor. Please. To reconsider the I have a follow-up question on that as well. I understand the argument that you're making about there is some authority, it seems, that Arizona might ignore its preclusion rule that I think the parties otherwise agree applies, right? Yes. Okay. So, and I think that I read Anderson and there are a few other cases that seem to suggest that Arizona does have that discretion to ignore its preclusion rule and go ahead and consider a defaulted claim. What I'm not clear about is what that means for federal law, because in federal law, my understanding from reading the Supreme Court cases in this area, it is still a procedurally defaulted claim even if the state has discretion to ignore that default. Is that correct? Yes, and because Martinez continues to be good law, you know, that would excuse the default, but the problem after Vermeer is that the evidence isn't before the court. I understand that, but I'm trying to get at sort of what bucket we're in in terms of classifying the claim, and I just want to see if you disagree with my reading of the federal cases that seem to indicate that even if a state has the ability to ignore its procedural default rules for federal purposes, it's still a procedurally defaulted claim. I think that's right, and I think that's what happened in Martinez itself. Okay, thanks. So turning to the Eddings-Ritt, the Tenard grant, the district court got it right. The Arizona Supreme Court unmistakably applied a causal nexus test to Mr. Doar's mitigation. On his low IQ, he presented evidence that he was functioning as intellectually disabled as a child, that people described him as an adult, as kind of slow and like a kid, and a trial expert found he was poorly equipped mentally, emotionally, and socially to cope with everyday life. The Arizona Supreme Court rejected this as mitigation because the experts didn't testify it would affect him knowing right from wrong, and we know from Atkins and Tenard that the very basis of low IQ evidence is that it's inherently mitigating regardless of whether the person knows right from wrong. What — of what relevance is the trial court's, the sentencing court's statement that even if it had considered every one of the mitigating circumstances, they still wouldn't have been significant enough to call for leniency in this case? I think reading the — that special verdict as a whole, it's clear that the court is repeatedly applying the causal nexus error, and it's making that statement in the context of applying that law, which is Arizona law at the time. And because it's — the court is applying that causal nexus test, which is unconstitutional, you turn to Brecht error. Well, see, I sort of had read that statement as saying notwithstanding our causal nexus test, look, I'm just going to look at this evidence as a whole. But you're saying within the context it should not be read that way. I don't think it should be read that way. And I think, you know, the most — because of McKinney, the most important question is what was the Arizona Supreme Court doing? And it's clear that it was cutting out all of that mitigation. And just to — Well, to follow up on that, I mean, I have a similar question to Judge Thomas about that, because I think it — I think you're right that there are things in the Arizona Supreme Court's decision and, frankly, the sentencing court's decision that indicate that they were thinking about that causal nexus test. But there are also statements that indicate that they were considering these factors, this evidence about his background, in a weighing manner. And the causal nexus test would say, you don't weigh it at all, you just don't consider it, period. You just set it off to the side. And it's not part of the calculus. So if we have statements in the Arizona Supreme Court's decision, which I think we do, that indicate that they weren't just entirely setting it aside and they were weighing it to some degree — there's a couple of statements that specifically use that terminology — what do we do with that? I mean, because that wouldn't be error to put it in the calculus as a weighing of all of the considerations. I think the district court got it right that the Arizona Supreme Court specifically ignored the childhood abuse, the alcoholism, the low IQ, and the brain damage based on the causal nexus requirement. But at one point, the Arizona Supreme Court says, you know, the trial court correctly gave the family circumstances minimal weight. But it doesn't say that no weight should have been accorded or that they were irrelevant. So I guess maybe I'm just asking the same question, but there are a few times where there's a statement about minimal weight, and it's hard to know what to make of that, because that doesn't seem like what the causal nexus test would have demanded that the court say. I think the court should have said they were irrelevant under that test. Yes. I think there are two things that are relevant to that. The first is, in McKinney, the court discusses the various formulations. The court may be saying it some way slightly differently in each case, but it's clear it's imposing that test. Isn't it possible that they could have been doing both? That they could have been saying, we think the causal nexus test applies, but regardless, if we were to weigh these things, this is how we would do it? I think the court's analysis in the Arizona Supreme Court is really useful in that, because they're going through factually and paying attention only to whether there's a causal nexus. It doesn't talk at all about whether his long-term alcoholism would have been important. It talks about intoxication on the night of the offense, and it doesn't address any other impact of his alcoholism. So on each factor, especially the way the court is going through its factual analysis, it's clear that it's looking for a causal nexus. As I'm reading the opinion of the Arizona Supreme Court, the paragraph preceding its talking about what the trial court did cites State v. Towery, quoting State v. Towery. The language in State v. Towery that's quoted is, in the absence, a difficult family background is not mitigating, period, not mitigating, in the absence of some connection. So we get the causal nexus test is not mitigating, and then we get a citation to Wallace that again has that very precise language in it. Then we get to the paragraph, and at the end of that paragraph, the Arizona Supreme Court says, while the judge found the offense an established and abusive family background by proponent of the evidence, he correctly gave those circumstances minimal weight. And that is what the district court, that is what the trial judge said. He said minimal weight. Well, but it looks as though this was affirmed based upon these cases that say they get no weight. So what am I supposed to make of minimal weight? Are we supposed to read that as saying, in effect, we're not going to pay any attention to it? I think you can't read, based on the totality of this Supreme Court opinion, and in light of McKinney, I think that you can't take that one statement as indicating what the Supreme Court has done in the face of all of the factors in, you know, McKinney, Greenway, and Oppel, that there's the factual conclusions about the causal nexus. The Supreme Court goes through those. And as you know, it cites Wallace, which is the case that established the unconstitutional causal nexus test. Why shouldn't, so that language that Judge Fletcher just read, of course, we're all wrestling with that. Why shouldn't we read that language as an adoption of the sentencing court's alternative statement about, even if I was to consider everything, I'd give it minimal weight? Again, I think it's just, it's the full language of what the court's doing. The court is saying repeatedly, it is not mitigating. And under McKinney, under Martinez, this court looks at the Arizona Supreme Court and only looks to the trial court to the extent it substantially adopts what the trial court has done. So, you know, as to the abusive family, the court is repeatedly saying and citing Wallace, it is not mitigating. And on other factors, it's even more clear. So even if the court finds that that one statement, despite all of the other findings, means there's not a causal nexus problem there, it's very clear that both courts ignored his low IQ evidence. They completely rejected it as a mitigator. And the same with the alcoholism. They just say these are not mitigating because there is no causal nexus. So there's an Eddings error. Yeah. Well, and as the alcoholism, the court does some analysis in the sense of there's no proof that he was affected by alcohol at the time of the crime. And once they've done, once the court's done that, they're finished with it. That's right. And that doesn't pay any sort of individualized attention to the fact that he had been a long-term alcoholic and started in an orphanage and that that's all interrelated to his plea for mercy. So if, you know, once the court finds that he can overcome D because of those, because of the causal nexus error, it has to turn to prejudice. And I just wanted to highlight one case that we didn't, we neglected to put in the briefs, which is Sprites. And that case is very similar on both sides and important to the prejudice issues. So I just wanted to highlight that. If the court doesn't have further questions, I may just save the rest of my time. I thought you were going to get into the effect of the evidence had it been considered. That is to say, so far we've only argued Edding's error. OK, why is it harmful, Edding's error? It's harmful because it ignores almost all of the evidence that the court or a sentencer could find empathetic. The best comparisons are Sprites and poison. The evidence here is particularly compelling. His child, the district court went through in good detail about his really disturbing childhood and his serious developmental issues. They were noted. He was functioning as intellectually disabled in an orphanage and started drinking there. There's evidence of alcoholism throughout his life and brain damage. And especially in considering this crime, all of those things are really crucial to understanding. And brain damage is tricky in this case because we can't find or the doctors were unable to find through MRIs or sort of they don't they don't see it physically in the brain. But we but we do have pretty clear evidence that this man is, I'll say it in an informal way, that he's not right. And we have one of his caretakers at one point saying, well, you get mental retardation for some people because it's an eight. Basically, it's genetic or you get some people because it's caused. And he says in here it's been caused. That is to say, we get somebody who's just observing this boy or young man in real life and saying, listen, whatever happened to him in the home was so awful that we end up with this mentally, what the right word is, limited person. Yes, I agree. And, you know, I think I should address that, the issue of the trial court finding the brain damage speculative. I think what if you look carefully at the experts' testimonies and their letters, what they're speculating about is what caused the brain damage and whether there's a causal connection to the murder. They're not speculating that exists. Well, I mean, I've dealt with a lot of cases over the years and I was on, I've been on various study groups and so on. And the gold standard that the defense always wants is physical evidence that shows up in the MRI. But that's very seldom there because a lot of things about brain capacity, brain function just don't show up in MRIs or other sort of picturing devices. And that's the case here. We clearly see that this man is struggling intellectually. He basically can't read. He's got emotional difficulties. I mean, and the fact that it doesn't show up in the brain scan. Well, OK, it doesn't show up in the brain scan, but that doesn't mean it's not there. That's right. And Dr. Heisman, who did the PET scan, writes a letter about this and says, you know, diffuse brain damage isn't going, isn't necessarily going to show up on a PET scan. And that's not surprising at all. And you're very right that there's a lot of evidence of his limited intellectual development through testimony, through the state court records. He's noted as, you know, functioning as intellectually limited. And another just clear piece of evidence about how low his functioning is, is his aunt testifying that he writes her back, me OK for today. That sort of gives you a picture of what the trial court was missing. As a way or as I try to weigh the horror of this crime against the mental deficiencies. One of the things that's puzzled me about this, well, I shouldn't say puzzled, but one of the things I've tried to get my hands on is the Rosales testimony, because that one, he's the jailhouse, I don't know what the right word is, I could say snitch, but the jailhouse testifier. And there's some reason to disbelieve him, but he's the one who testifies. That door told him that he played with the blood and the court then uses that as support for relishing. I didn't find in the ERs the full extent of that testimony and cross examination. And I've asked to get the underlying state court record and I haven't seen it yet. But depending a little bit on how much the jury was allowed to take that Just standing here about the Rosales testimony. Yes. And just to the trial court, the judge did the sentencing. It's definitely clear from the record that he can't read. And it's clear from the record, his trial counsel sent him all his police reports. There's evidence that's sort of invisible to you because of Ramirez about that people later said down the line. But the only testimony of him saying anything about that is Rosales, who claimed to have been his cellmate. And even if you have to take that without the sort of invisible evidence because of Ramirez about what we later learned about Rosales, you still have a lot of evidence in the record about his low IQ and his sort of bragging and making things up too, which is really typical of someone with low IQ when they're masking. So what I'm trying to figure out, and this, of course, is a piece of the puzzle. This is not the entire puzzle. What I'm trying to figure out, and I can't do it until I've actually read the full transcript of the examination of Rosales, is how likely is it that their jury believed Rosales when Rosales testifies that Dorr said he played with the blood? Because that particular comment is so revolting. I have to think that it's going to affect the jury verdict as we're or as we evaluate the effect of this mitigating evidence put to one side. I mean, how am I supposed to look at the Rosales evidence? Because that's evidence on the other side. The trial court credited that evidence and talked about it, and so did the Arizona Supreme Court. They found that compelling, and that's understandably so. On the other side of it, there's a lot of record of both the DCFS records, Holly Wake's summary, and the testimony that puts that into a different context. So is what you're saying is that there isn't some deficiency that would be apparent to us about Rosales' testimony itself? I think that's right. There is evidence of that, but it's now, again, not before the court, right? No, I'm sorry. I'm not quite understanding. What is this invisible evidence that we don't have? So this is in the E.R.'s specific to the IAC claim, which is evidence that he wasn't ever, there's declarations from Mr. Rosales, from a person who was Mr. Dorr's cellmate, Steven Schwartz, and from an investigator who spoke to Rosales. And those all basically say he wasn't actually his cellmate. He took his police reports. He wanted, you know, to make a deal. The things that he, he wanted to say what they wanted to hear. Yeah, I see. So that's the stuff that comes in with respect to the IAC claim. That's right. It didn't come in in state court. So that's why I say it's... But on the record that we do have, on the transcript that we'll get, is there anything about Rosales' testimony on its face that I guess would have been troubling to the jury? The trial counsel does ask him some questions about, isn't it strange that you're claiming to be cellmates because you're different races? Isn't it weird that the jail would put you together? And so he does ask him some questions. He doesn't bring out evidence that it's not true that they're not cellmates. But he does go through that that sort of question. Some of that might be sorted out if we were to grant the Ryan's motion. Yes. That would be much, I think that would be much clearer because that evidence would then be before this court that it could have the whole picture of that. I'm trying to figure out like what, which of the claims before us relates to the Rosales' testimony? Because you're not actually asking us to revisit the jury verdict. You're asking us, your claims are based on sentencing. I suppose you have the jury bias claim. But other than that, it's sentencing. And so I'm trying to figure out like what, what claim was the Rosales' evidence going to go to? It goes to the sentencing in that it's important to the weight of the aggravation. As you pointed out, that's that is a much is more compelling in mitigation because there's no other statement that he remembers any of this and that he, you know, so the way that we would apply to that. So that that's the IAC claim would be Strickland. And that that particular evidence goes to the relishing factor of F6 and whether I'm trying to string this together. So the theory would be under the ineffective assistance of counsel claim that the trial, the sentencing counsel was ineffective for not discrediting Rosales further. Yes, for not finding the evidence that well, for one, sending in police reports to a jail to someone who can't read them, and then they're used. That's a separate issue. So I'm just focused on the Rosales piece right now. Okay. So, so if that's the theory, then we apply Strickland. And what I'm struggling with is how would we ever say that there is Strickland ineffective assistance of counsel where the sentencing court found, I think, three other aggravating factors that each one of them all by themselves would be sufficient to support the sentence? Yes. So there's one aggravator. And this is Rosales' testimony is one piece of that, which is relishing. And you're right, we're not arguing that that aggravator wouldn't exist. We had cruel and we had heinous. We have these other factors that don't depend on Rosales' testimony at all. That's right. It's simply that in the overall weighing, that is important in that they didn't bring in all of the mitigation, including of his childhood sexual abuse, including of his intellectual disability diagnosis. And on the other side, they didn't show that he didn't, it's just all interconnected to what they didn't do to have an appropriate balancing at the sentencing. So the question is not whether the aggravator exists with or without the relishing. It clearly exists without the relishing. The question is the strength of the aggravator. Yes, Your Honor. I see I have four minutes. If I'll save the remainder of my time for rebuttal. Good morning and may it please the court. My name is Jason Gannon. I represent the respondents in this matter. I'm intending to just use my entire time. I won't do anything different. I would like to first address the readdressing the Rines stay. The Anderson case is an alter Arizona's rules of preclusion or Arizona case law, stating that ineffective assistance of counsel claims that were not raised in a previous post-conviction proceedings will be considered waived and precluded under Arizona law. Anderson is an extremely limited holding and based on the specific facts of the case related to Arizona's removal of parole and the legal community's persistent misunderstanding of what that indicated. And so a stay, a Rines stay to raise the ineffective assistance of counsel claim that was raised in claim 28 would still be considered. And the evidence could not be considered by this court as stated in McLaughlin. I guess the question is why we shouldn't just go ahead and let Arizona tell us that they won't consider it rather than us assuming that they won't consider it. I mean, how are we really to know that they won't find that it's an Anderson-like, unusual, extraordinary circumstance? Because this is not Doar's ineffective assistance of counsel claim is in an extraordinary circumstance. The original PCR counsel made a strategic decision in raising the claims of ineffective assistance of counsel that they did raise. As the district court found in reviewing whether Doar would have been prejudiced, the substantial and weighty aggravation in this case makes prejudice particularly difficult to find. And also the district court's evaluation of the habeas evidence showed that the claim would be meritless of itself. You're just telling us why you would argue to the Arizona court that they shouldn't forgive the procedural default, but they might do it. You don't know, or at least I don't know. Well, the procedural, the preclusion rules are clear and... But it's also clear in Arizona case law that procedural default is sometimes forgiven. I mean, we know that. That's correct, Your Honor, but those are only... rather than to find out from the court itself what's going to happen. Because, Your Honor, as I said, Anderson is an extremely limited holding. Well, I read Anderson, yeah. And the other case that comes to mind is State v. Diaz, which in that case was another example of an extremely limited exception to the procedural default. Well, if I were arguing the other side, and I'm not trying to decide the question. It's for the Arizona court to decide. I would say, well, you know, this is extremely limited because the Martinez circumstance is itself an unusual circumstance. That is to say, we've had ineffective assistance counsel at trial. We've had ineffective assistance at the post-conviction proceeding. At least that's the contention. You don't get that very often. And the Supreme Court has given us a special rule directed to that very narrow circumstance. And this case would then come to the Arizona Supreme Court dealing only with that narrow Martinez circumstance. And who am I to say that the Arizona Supreme Court is going to say, sorry, that falls under the general rule. It doesn't come under the sort of the narrow band that we've enunciated in Kerrigan, and it shows up in Diaz, and it shows up in Anderson. Well, also, Your Honor, this claim would be untimely. He had the information for the ineffective assistance of counsel claim in 2002. Well, that's one more argument you've got to make to the Arizona Supreme Court or the Arizona court system. You might succeed. I mean, related to that, are you aware of any federal authority that grants a Rines stay in abate, a stay in abatement on a procedurally defaulted claim? I am not aware of one, Your Honor. My understanding of how all of this works, and it's very complicated. I did this like complicated flow chart last night as I was trying to put it all together. My understanding about how all this works, you know, in habeas, we're sort of, we're sensitive to federalism principles and sort of respecting state decisions, but we're also making sure that federal rights have been honored and trying to balance those things. And so, my understanding is that we send back unexhausted claims to let state courts decide them and we stay federal proceedings for that to happen, but exhaustion and procedural default are separate things. And so, if we conclude that a claim is procedurally defaulted out of respect for state rules of process, we don't send those back. Correct. We then apply our own rules of, is there a reason to ignore the default? And then we have the cause and prejudice standard. So, I'm trying to figure out, is there any authority for sending back to the state courts to answer a claim that is something that everyone agrees is procedurally defaulted? Nothing is coming to mind, Your Honor. I haven't fully briefed this issue or researched in preparation for this. If the court would like supplemental briefing, I could do that. But I believe that given the clear law in Arizona, the claim would be technically exhausted but procedurally defaulted. And this court, unless it finds... Has the Supreme Court given us any guidance about, in terms of the Rines stay process, how we should think about technically exhausted versus actually exhausted? Again, Your Honor, I apologize. I don't have that right on my tip. I can prepare supplemental briefing if this court would like on that issue, but I'm just not prepared to answer exactly that question. I'm sympathetic to that. Given the order we answered previously, you might have thought this was not really on the table. I would also like to, unless the court has further questions, I would like to move to the Claim 3, or the, I'm sorry, the cross appeal. And so, as this court mentioned in the questioning of my colleague, the Arizona Supreme Court seems to both apply the causal nexus test. There's some evidence showing that it applied a causal nexus test, but it also shows evidence that it considered and weighed the evidence. So, given that, do you just concede that, at least to some degree, there was error? We do not concede that there was error. We understand, the respondents understand that this court does not have authority to overturn McKinney, and because it's an en blanc panel, but we do not concede that there was any error in this case. Well, is that, is that accepting McKinney, even accepting McKinney, you don't concede that there is error, or do you have to, we have to set aside McKinney to? Well, so, to preserve the issue for appeal, for further appeals, we maintain that McKinney is wrongly decided, but even if McKinney is applied in this case, the district court erred in finding that Doar was prejudiced by the failure to consider the That's a harmless error argument, not a, there was no error at all. Yes, that is an alternative harmless error argument. And the district court's analysis after McKinney focused solely on whether there was a McKinney error and then concluded that Doar, there was a substantial and injurious effect on the verdict. The district court did not conduct any analysis into the aggravation in this case or the rebuttal evidence presented by the state to address the different mitigating factors. The aggravation in this case is extremely weighty. There's both cruelty and heinous and depravity. Cruelty focusing on the physical and psychological suffering of the victim. In this case, the murder was a roving assault covering every room of Doar's apartment, leaving blood in every room. There was a bloody footprint in the bathtub. The victim's bloody hair swipes were on the walls. She was found clutching her own hair. Her neighbor heard her screaming, blood-curdling screams, no, no, at 3.30 in the morning. Further, there was defensive wounds. She had multiple injuries all over her body. That's the cruelty factor. And that alone would satisfy the aggravating circumstance. But then there's the heinous and depraved. So to get to Judge Fletcher's questions to opposing counsel, it's not as though we sort of like count up, well, you have how many aggravating factors and how many mitigating factors and whichever one you have, like the numerical most of, that's the way you go. That's not how this works, right? It is a weighing, it's sort of a holistic, we look at all the things. So why isn't Judge Fletcher's questions? Why isn't he correct about if we take one of the aggravating out, even though there are remaining aggravatings, how do we know what the sentencing court would do? Why isn't that a winning argument? Because the sentencing court expressly stated that even considering all of the mitigation presented by Doar, given the heinousness, depravity, and cruelty Doar inflicted during this murder, that it would be insufficient to warrant leniency because Doar's murder was far and above the norm of a first-degree murder. This goes to the Brecht analysis, showing that even if all of the mitigation was considered, it didn't have any impact on Doar's sentencing based on the aggravation and the minimal mitigating weight of the mitigating, of the mitigators in this case. This court has held in Hooper that an abusive and dysfunctional childhood is given lesser mitigating value when the defendant is 35 years old when he commits the crime. Doar was 35 years old when he committed this crime. He, as the Arizona Supreme Court, mirroring the trial court, stated, Doar did not have any contact with his family for 20 years. He left when he was about 15. He had no contact with them. And so because, although it is a mitigating circumstance, it's entitled to minimal mitigating weight. The problem is that, as Judge Fletcher pointed out, some of these cases that are cited by the Arizona Supreme Court are not cases in which the court gave just minimal weight but said it's just irrelevant. There's no weight entitled to be given to these factors. And even if one agrees that 20 years is a longer time than in some other cases, is that really entitled to no weight whatsoever? Well, I'm arguing that the under the Brecht analysis, there wouldn't be any impact on the verdict or the sentence, because the courts can consider, and Arizona has clarified, that although it does not require a causal nexus for the evidence to be considered, it is relevant for the mitigating weight. Well, it has now, sure. That's the rule now. That's what the court does now in the wake of McKinney. Correct. But that analysis still looks at this case, which was decided before McKinney, of course. Correct. But in this Court's de novo review of the grant of habeas relief, as the Court stated in de jure, I don't know if I'm saying that correctly, but the Court must reweigh the mitigating factors that were alleged not to have been considered by the trial court against the aggravation in this case. And so we have the cruelty factor, but we also have the heinous or depravity, which shows the moral corruption of the defendant and that the murder was shockingly evil. We have the This is a horrible, horrible, repulsive crime. I mean, nobody can look at this crime and say, this is just garden-variety first-degree murder. I totally grant you that. And that is what the trial court found, that even if all of the mitigation had been proven, that it would not warrant a life sentence given the heinous and cruelty of the murder. But the problem is, the horrible childhood did not seem to enter in any serious way into the calculation, and it did it — did not do so because of the way the Court treated non-causally connected factors. Why should we — I mean, I've got serious doubt — I don't know, of course I can't know — I've got serious doubt as to what the Court would have done had it given its full attention to the horrible childhood that Doar had. You say, well, he left the family at 15. Well, as the twig is bent, so grows the tree. Fifteen is a — you can damage someone pretty severely, and he was damaged pretty severely by the age of 15. So — and as I understand it, what happens if we were to rule against you on the existing record? So the Arizona Supreme Court can take another look at it and can decide the sentence. It doesn't have — we don't go to a jury under a ring. We just send it back to the Arizona Supreme Court. It now looks at all the evidence without the distorting effect of the Eddings violation, and away we go. Why shouldn't we allow the Arizona Supreme Court to have another look? Because, Your Honor, the Arizona — the sentencing court stated that it — all the mitigation wouldn't have affected its verdict, and the — Well, we're actually reviewing what the Arizona Supreme Court did. We do a de novo review of what the Arizona Court did. And, of course, the Arizona Supreme Court — and I read some of the language — says, after it cites the cases that we know violate Eddings, it then says, and the trial court did not err in giving it minimal weight. So I'm looking at what the Arizona Supreme Court did. And so — but re-weighing the mitigation — or reconsidering the mitigation versus the aggravation in this case, you're right, the — if this court grants relief, it would go back to the Arizona Supreme Court to redetermine. And as you stated previously, the Arizona court has corrected the — has clarified the causal nexus requirement. And so they will still apply a causal nexus, but this will not be to determine the — will not be used to determine whether the evidence is to be considered, but whether the evidence — what weight should be given to that evidence. And the weight that would be given to this evidence would remain minimal, as the Arizona Supreme Court stated, that it correct — the trial court correctly gave the abusive family trial to minimal weight. Sotomayor, it would be going back to the Arizona Supreme Court, saying to the Arizona Supreme Court, those two cases that you cited in your discussion of this evidence, those cases were wrong. And you're now supposed to give — without this causal nexus test at all, you're not going to be able to determine whether the evidence is appropriate. That's going to be something different from what the Arizona Supreme Court has done already in this case. We would be asking them to perform a task different from the one that, on the face of it, they performed. I mean, take out those citations, and then decide the case. So, again, this — the — as you have stated, this horror — this murder is horrific. The mitigating circumstance of an abusive family childhood is there, but it should be given minimal weight, or the weight that it's given will not outweigh the especially weighty, aggravating circumstance in this case. And further, this is one of the few mitigating circumstances that the court found had been proven. The intellectual — or the brain damage, the court rejected Doar's experts and accepted the testimony of the state's expert, who found that Doar's mechanical aptitude, his that he did not have brain damage. And so the — in considering this mitigating circumstance, the court weighed the conflicting testimonies of Doar's experts versus the state's expert and found the state's expert more credible. And so the other mitigating circumstance that the court found was his alcoholism. This alone should be entitled to minimal mitigating weight, especially given the testimony that when Doar drank too much, he would tend to pass out and would be able to sleep through jackhammering around him. And so — and given that there was no objective evidence outside his self-serving testimony that he had been drinking, the blood alcohol level was zero. The officers who responded to the scene stated that they — he was coherent and didn't smell of alcohol. And so just having the — just having an alcoholism means very minimal mitigating weight. I also want to address this court's questions about the Rosales testimony. And so the Rosales testimony involving that he, Doar, enjoyed playing with blood, counsel defense counsel thoroughly impeached Rosales. He presented testimony that the day that the State investigators went to meet with him, that was — it was the same day that he entered into a plea agreement. The State clarified that he — I believe he pled guilty and then met with the State investigators. And let me make sure I understand properly the — I guess I'll say the procedural posture of the Rosales testimony with respect to sentencing. I gather that Rosales was not brought in to testify during the sentencing proceeding, but that his testimony that he'd given during the guilt phase was considered as part of the sentencing decision. Do I have that right? That is correct, Your Honor. So the Rosales testimony, what it meant, how it worked through is relevant to our understanding of the sentencing. So could you clarify? Yeah. Well, I'm just trying to — in a sense, everything is relevant to the sentencing. Everything that went on in trial is relevant. But the Rosales testimony was specifically brought into the sentencing proceeding, not by bringing him in to testify, but the judge was invited to look at the Rosales testimony as he considered the sentence. Yes. It was part of the aggravation. Yeah. Right. Okay. As Judge Fletcher mentioned, we don't have that. Do you have the trial testimony for that witness? I believe so, Your Honor. I can make a copy available to the Court. If you could file that in a supplemental filing afterwards, that might save us some time in trying to access it. Yeah, thank you. Because I came on to this case late, and I made a request through our offices to get the state court record in order to get that. I can abandon that request if we can just get it straight from you. Okay. I will try and get that sent to the Court. Thank you. Also, I would just like to highlight for Rosales' testimony that the state presented evidence showing that there was nothing in the police reports showing that Dorr had blood on his hands and that to counter the defense's claim that he received all of this information from the police reports. There was also thorough cross-examination about how he got this information, the use of the police reports, how he had access to them, but there was testimony presented that there wasn't any testimony or anything in the police reports showing that Dorr had blood on his hands to indicate that he played with the blood. Even if you set, I suppose, Rosales' testimony aside altogether, you still have, I mean, there's a lot of aggravation. Right. Such as the gratuitous violence where the state couldn't prove that the victim was alive when she was violently sodomized in both the rectum and vagina with a metal pipe and a knife. It was so badly that her family couldn't recognize her, the amputation of her left nipple and the attempt to do the same on the right. The aggravation in this case is extremely weighty and the mitigation, as the trial court stated, considering all of the mitigating factors in this case, it wouldn't warrant leniency and a life sentence for Dorr. Unless the court has any other questions or would like me to address the other claims, I'll sit down. Thank you for your argument. I just have a few quick points in rebuttal. On the Rines issue, it was not a strategic decision for post-conviction counsel to miss this claim. I agree the appropriate thing is to let the state court hear this. I'm going to ask you what I asked your friend across the aisle. Are you aware of any federal decision that says that a Rines stay in abatement is appropriate for a procedurally defaulted claim? As I understand it, this is what happened in Martinez. The state court heard the claim in a successive PCR and then it was heard in federal court. Because Martinez is still good law, I think that this court, if there was a stay, could still consider that claim and then, because the evidence is in the state court record now, could consider that evidence after Ramirez. I just wanted to point the court to PCR counsel's declaration, which is ER 1261, on the point of whether this was strategic to leave out the sentencing claim. On the timeliness issue, there's also a relevant Arizona case, Reed. It's 501 P3rd 748. Timeliness is not a question of, in Arizona law, timeliness is not just a question of The court weighs the substantial consequences of hearing the claim or not hearing the claim, and especially where someone is, again, intellectually disabled and has a PCR counsel who thinks it's a direct appeal and never even meets them, the Arizona courts could find those circumstances enough to hear the merits of the claim. I wanted to briefly address the aggravation and reiterate the JIRF standard that you review the aggravators proven and ask whether the consideration of the improperly ignored evidence would have a substantial impact on the sentencer. And I would never stand here and say that the crime here is not terrible, but I would ask the court to compare it to sprites and poison, which both, in both cases, had difficult crimes, but particularly weighty mitigation. The one thing that I'm struggling with in this context is, if we say that the causal nexus analysis is improper in determining what things you weigh, what things you put into the calculus, but it is not improper to think about causal connection in the actual weighing once you have identified all the things that should be weighed, it seems in that context that the harmless error analysis is complicated in that, you know, it would be easier, it would be cleaner if the error was you considered something that you shouldn't consider for any purposes. So now we have to go back and think, how would you think about this, taking off this consideration that shouldn't have even come in at all? Here it's different because it's the consideration has to be used in one way but can't be used in another way. It's not that it's completely off the table. And so, because we do have the state court sort of talking about this issue and how they think about it and how compelling they think it is, doesn't that lend itself to a conclusion of harmless error? I don't think you have to import the Arizona court's causal nexus requirement. I think the question is prejudice under Brecht, which is whether this would have a substantial impact on censor. Well, that's what I'm, I'm using the wrong language. You're right. I'm sorry. It's the prejudice, not a harmlessness label. How do we find, how, isn't it harder to conclude that the outcome would have been different had they just considered this issue a different way than they did? I think that what's important, what helps with that is to go through each of the mitigators and see how they've been treated in cases where this causal connection wasn't required. For example, Tenard, the low IQ was particularly compelling there. So I think for each of these aggravators, there are things that courts have found particularly compelling and you can find that excluding that had a substantial impact. I only have a few moments left, but I just wanted to address the point that there's no evidence of alcoholism. I think there is evidence of alcoholism in the record. In the ISIS records, he begins drinking at 15 or 16. He calls himself a long-time alcoholic. They note when he's 17, he's having money management issues and he makes big deposits and spends them, and he's seen under the influence of alcohol on the orphanage grounds. At 29, there's the hospital records, which are attached to the defense's sentencing memo, where he's thrown 30 feet from a car, and the hospital records is 12 ER 3272 and 3292. Note him to be extremely intoxicated and uncooperative. And then there's the statement from his sister that he often gets drunk on payday, gets very violent, and so there's plenty of evidence in the record of his alcoholism that's not related to his intoxication on that night. And most importantly, that is all interrelated to the sadistic, awful childhood he had, his functioning issues. None of those things can be separated from his plea for life and what a sentencer might find mitigating if it was permitted to consider that evidence. Thank you. All right. Thank you to both counsel for your helpful argument in this difficult case. We will take the matter of Dorr v. Shin under submission. All rise.
judges: FLETCHER, FORREST, THOMAS